UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN A. CROSS,

Plaintiff,

v.

Case No. 1:07-cv-1260
Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_______________________________/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision that his disability has ceased.

Plaintiff was born on September 14, 1963 and completed the 12th grade (AR 250).[1] In a decision dated June 13, 2002, the Commissioner of the Social Security Administration (Commissioner) found that plaintiff was disabled as of March 10, 2001 and awarded him disability insurance benefits (DIB) (AR 14). Plaintiff had a primary diagnosis of epilepsy and a secondary diagnosis of affective disorders (AR 24-25). After performing a disability review, the Commissioner found that plaintiff was no longer disabled as of August 1, 2005 (AR 24-25).

Plaintiff alleges that his seizures are more controlled, but that he suffers from medication side effects such as "drowsiness, dizziness, tiredness, memory loss" (AR 103, 253). He had past employment as a restaurant maintenance person, cook, stocker and car washer (AR 250-52, 271). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed

[1] Citations to the administrative record will be referenced as (AR "page #").

plaintiff's claim *de novo* and entered a decision denying these claims on April 27, 2007 (AR 14-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs an eight step sequential evaluation for a continuing disability review which differs from the five step sequential evaluation used to determine if a claimant is disabled in the first instance. *Compare* 20 C.F.R. § 404.1594 and 20 C.F.R. § 404.1520. The eight step sequential evaluation for continuing disability review has been summarized as follows:

> (1) Is the individual engaged in substantial, gainful activity?
>
> (2) If the individual is not engaged in substantial, gainful activity, does he have an impairment or combination of impairments meeting or equaling the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (3) If the individual does not have an impairment meeting or equaling a listing, has there been medical improvement in his condition?
>
> (4) If there has been medical improvement, is it related to the individual's ability to do work?
>
> (5) If the individual has no medical improvement or if the medical improvement is not related to his ability to work, do any of the exceptions noted in 20 C.F.R. § 404.1594(d), (e) apply? If none of them apply, the individual's disability will be found to continue.
>
> (6) If medical improvement is shown to be related to the individual's ability to do work or if one of the first group of exceptions applies, are the individual's current impairments severe?
>
> (7) If the individual's impairments are severe, can he engage in past, relevant work?
>
> (8) If the individual cannot engage in past, relevant work, can he engage in other work in the national economy?

*Brewster v. Barnhart*, 366 F.Supp.2d 858, 870-871 (E.D. Mo. 2005).

## II. ALJ'S DECISION

The ALJ initially found that plaintiff did not engage in substantial gainful activity through August 1, 2005, the date his disability ended (AR 16).[2] Second, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16). Third, the ALJ found that medical improvement occurred as of August 1, 2005, noting that plaintiff had a decrease in medical severity of the impairment present at the time of the "comparison point decision" (CPD) (AR 16). The CPD is the most recent favorable medical decision finding that plaintiff is disabled, in this case, the June 13, 2002 decision finding that plaintiff was disabled as of March 12, 2001 (AR 15). Fourth, the ALJ found that the medical improvement is related to the ability to work because, as of August 1, 2005, "the impairment present at the time of the CPD no longer met or medically equaled a listing" (AR 17). The ALJ did not explicitly address the Fifth step. However, because the medical improvement was related to plaintiff's ability to work, none of the exceptions applied. Sixth, the ALJ found that plaintiff continued to have severe impairments as of August 1, 2005 (AR 17). While the ALJ did not enumerate specific severe impairments, he observed that plaintiff had: mild disc protrusion in the lumbar spine; moderate disc problems at L5-S1 and L4-L5; back pain; epilepsy; and a dysthymic disorder (AR 17).

---

[2] While the ALJ discussed the eight-step evaluation process in 20 C.F.R. § 404.1594(f)(1)-(6) (AR14-15), his decision did not include a structured sequential evaluation. However, after reviewing the decision, the court concludes that the ALJ followed all eight steps.

Seventh, the ALJ found that as of August 1, 2005, plaintiff could not perform his past relevant work (AR 19). In reaching this determination, the ALJ found that plaintiff had the following residual functional capacity (RFC):

> to lift or carry a maximum of 10 pounds occasionally and less than 10 pounds frequently. In an eight-hour workday, the claimant can stand or walk for two hours and sit for six hours. He needs the option to sit or stand at will. The claimant should never use ladders, scaffolds or ropes. He should only occasionally use ramps or stairs. The claimant should avoid walking on uneven surfaces. He should avoid exposure to hazards including dangerous/unprotected machinery or work at unprotected heights. The claimant can only do simple unskilled work with a specific vocational preparation (SVP) rating of 1 or 2.

(AR 17).

Eighth, the ALJ found that as of August 1, 2005, plaintiff was able to perform a range of sedentary work and "was capable of making a successful adjustment to work that existed in significant numbers in the national economy" (AR 20-21). Specifically, the ALJ found that plaintiff could perform the following jobs in the relevant region (Michigan): parking lot attendant (1,000 jobs); clerical assistant (3,000 jobs); bench assembler (3,500 jobs); and checker/packager (3,500 jobs) (AR 21, 272). Accordingly, the ALJ determined that plaintiff's disability ended as of August 1, 2005 (AR 21).

## III. ANALYSIS

Plaintiff raises two issues on appeal:

### A. The ALJ committed reversible error by not discussing the evidence of the side effects of plaintiff's medicines.

Plaintiff has suffered from seizures since he was 13 years old (AR 225). Since 2002, he has been enrolled in an experimental drug program at the University of Michigan in an attempt to control his seizures (AR 260-61). Daniela Minecan, M.D., an assistant professor of neurology

at the University of Michigan, has treated plaintiff since at least February 2005 through December 2006 (AR 168-71, 217-33). In a report dated July 2005, the doctor noted that plaintiff was a participant in a study involving "Swartz investigational drug SP615" (AR 170). At that time, plaintiff suffered from "major side effects of blurred vision; monocular diplopia; decreased visual acuity in the right eye; bilateral ringing of the ears; frequent headaches; fatigue; sedation; unsteadiness; and intermittent pains in his chest" (AR 170). He also had rapid eye twitching not associated with loss of consciousness (AR 170). The doctors reported similar "major side effects" on December 19, 2005, including "blurred vision, monocular diplopia, decreased visual acuity in the right eye, bilateral ringing of the ears, frequent headaches, fatigue, sedation, unsteadiness, and intermittent pain in his chest radiating to his left arm" (AR 168). At that time, plaintiff may have been experiencing decreased visual acuity (AR 168).

Plaintiff continued to report these major side effects in March, June and September 2006 (AR 219-24). By September 2006, plaintiff reported a decrease in seizure activity, averaging one seizure every two or three months (AR 219). However, he continued to report significant side effects including: diplopia; constant bilateral tinnitus; lightheadedness; generalized discoordination; fatigue; increased restlessness; intermittent insomnia; increased flatulence; difficulty with concentration (which he reported prior to enrolling in the study); chronic low back pain; and chronic joint pain (AR 219). In December 2006, plaintiff reported an increase in his seizure activity, up to three per month (AR 217). He also reported the following side effects: intermittent erectile dysfunction; diplopia that occurs after taking the investigational drug which lasts approximately two hours; constant bilateral tinnitus; lightheadedness; generalized discoordination; fatigue and insomnia (AR 217).

At the administrative hearing in March 2007, plaintiff testified that the medication's side effects included double vision (lasting an average of four to eight hours), bilateral ringing in the ears, headaches, fatigue, problems with steadiness and balance, frequent falls, dizziness (lasting an average of four to eight hours), twitching in the eyes, lack of concentration and memory loss (AR 261- 67).

Allegations of a medication's side effects must be supported by objective medical evidence. *Farhat v. Secretary of Health and Human Servs.*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992). *See*, *e.g.*, *Bentley v. Commissoner of Social Security*, No. 00-6403, 2001 WL 1450803 at *1 (6th Cir. Nov. 6, 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Secretary of Health & Human Servs.*, No. 92-1632, 1993 WL 291301 at *7 (6th Cir. Aug. 2, 1993) (no objective medical evidence supported claimant's allegation that Tylenol 3 made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant).

Here, plaintiff has a well-documented history of medication side effects. While the ALJ briefly notes some of the side effects (drowsiness, dizziness, fatigue, memory loss and the inability to sleep) (AR 19), the decision does not address the limitations posed by these side effects in any detail. In addition, the ALJ does not even mention plaintiff's other major side effects, such as double vision, ringing in the ears and lack of coordination. Under these circumstances, the ALJ's decision has failed to adequately address both the nature of the medication side effects and the

limitations posed by them. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001), an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the ALJ has failed to provide a meaningful analysis with respect to the medication side effects. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of plaintiff's reported medication side effects and the resulting limitations from those side effects.

**B. The ALJ committed reversible error by improperly rejecting the RFC which was submitted by plaintiff's treating physician.**

Next, plaintiff contends that the ALJ improperly rejected the opinion of his treating physician, Dr. Minecan. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d

at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Dr. Minecan prepared a "medical assessment of ability to do work-related activities" dated February 23, 2007 (AR 234-37). In this assessment, the doctor stated that she last examined plaintiff in December 2006, and that he suffered from uncontrollable seizures with impairment of awareness and loss of consciousness (AR 234-37). This condition resulted in a number of limitations including: no lifting; no carrying; the ability to work at most 4 ½ hours in an 8-hour workday; occasional simple grasping; occasional fine manipulation; occasional pushing and pulling; inability to usae feet and legs for repetitive movements; never squat, kneel or climb ladders; sensory limitations to vision, hearing, speaking and balance; and avoid unprotected heights, moving machinery, chemicals, automobiles and bodies of water (AR 234-37). The doctor also stated that plaintiff suffered from a poor memory and poor concentration (AR 237).

The ALJ rejected Dr. Minecan's February 2007 opinion, finding that it was not supported by the doctor's reports or consistent with the record as a whole (AR 19). The ALJ noted that while plaintiff testified to experiencing three to four seizures per month in December 2006, he reported less seizure activity in preceding months (AR 19, 269). For example, in March 2006 plaintiff reported two seizures within the last six months, while in June and September 2006 he reported only one seizure within the last three months (AR 19). In addition, the ALJ stated that in

2006 "Dr. Minecan reported numerous times that the claimant had fairly good seizure control" (AR 19). The ALJ also appears to rely on statements made by plaintiff to a consultative examiner, Homan Mostafavi, D.O., back in July 2005 (AR 19). At that time, plaintiff reported that he had 12 to 15 seizures per year (with the last seizure being five months prior to the examination) and that he cannot sit for more than two hours, stand for more than one hour, walk more than four blocks, or lift more than 40 pounds (AR 150, 152). Finally, the ALJ stated that "[i]n addition, the issue of disability is ultimately reserved for the Commissioner" (AR 19).

The record does not support the ALJ's analysis in this case. First, while plaintiff's seizures were less frequent in the earlier part of 2006, plaintiff reported an increase in frequency by December. Second, Dr. Minecan did not report "numerous times" that plaintiff had "fairly good seizure control" in 2006. The record reflects only two occasions (June and September 2006) in which Dr. Minecan stated that plaintiff had "fairly good seizure control" while using the "study medication," Tegretol-XR and Lamictal (AR 219, 221). By December 2006, the doctor found that plaintiff had "a slight increase in seizure activity over the past 3 months" using the three medications (AR 217). Third, the ALJ does not explain how plaintiff's reported activity in July 2005 discredits Dr. Manecan's opinions expressed in February 2007. Fourth, while the ALJ's statement that "the issue of disability is ultimately reserved for the Commissioner" is legally accurate, it is inapplicable here. Dr. Manecan's February 2007 opinion provided an assessment of plaintiff's physical limitations; she did not state that plaintiff was disabled or entitled to a finding of disability.

Under these circumstances, the ALJ has not given good reasons for rejecting Dr. Minecan's opinion that as of February 2007, plaintiff's seizures were uncontrollable and resulted in a variety of work-related limitations. Accordingly, this matter should be reversed and remanded

pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Minecan's February 2007 medical assessment of plaintiff's ability to do work-related activities.

**IV. Recommendation**

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the (1) a re-evaluation of plaintiff's reported side effects from his medication and the resulting limitations from those side effects, and (2) a re-evaluation of Dr. Minecan's February 2007 medical assessment of plaintiff's ability to do work-related activities.

Dated: September 30, 2008

/s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).